# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Johns Manville,   Case No. 3:18CV152

        Plaintiff

        v.   **ORDER**

Local 20, International Brotherhood of Teamsters,

        Defendant

This is an arbitration case under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Johns Manville fired its employee Terrance Hudson because Hudson violated the company's substance abuse policy by reporting for duty, and working part of his shift, while intoxicated. Hudson's union, defendant Local 20, International Brotherhood of Teamsters, took the matter to arbitration, where an arbitrator ruled that Johns Manville lacked just cause for the discharge. The arbitrator ordered Hudson's reinstatement.

Johns Manville brought this suit to vacate the arbitration award. Local 20 counter-claimed to enforce it.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending are the parties' cross motions for summary judgment. (Docs. 10, 11). For the following reasons, I grant Johns Manville's motion and deny Local 20's motion.

**Background**

Johns Manville operates a fiberglass manufacturing plant in Waterville, Ohio. Hudson worked there for nineteen years, largely as a furnace tender. His superiors considered him a good worker, and he had not incurred any discipline since 2006 (and that for minor issues unrelated to the events leading to his discharge).

A collective bargaining agreement (CBA) between Johns Manville and Local 20 governs disciplinary matters at the Waterville plant.

The CBA recognizes the company's "sole and exclusive right . . . to discipline or discharge [employees] for just cause." (Doc. 4–1 at 54). It also reserves to Johns Manville "the right to determine the severity of those infractions, which warrant progressive discipline, and those which are subject to suspension/discharge for the first offense." (*Id.* at 59). Consistent with those principles, Johns Manville maintains two categories of employee rules: General Plant Rules, the violation of which ordinarily results in progressive discipline, and Critical Plant Rules, which "if violated would normally result in termination of employment." (Doc. 9–2 at 166).

Critical Plant Rule 10 forbids "[b]ringing, consuming, or being under the influence of intoxicants or narcotics in the plant or on Company property." (*Id.* at 173). The CBA's "disciplinary guidelines" further specify that rule violations "of a more severe nature such as . . . possession of drugs or alcohol . . . will subject [an] employee to suspension/discharge for the first offense." (Doc. 4–1 at 58).

Hudson nevertheless reported for the midnight shift on January 10, 2017 after having drank three margaritas earlier that night. A supervisor found it odd when Hudson complained, with excessive vigor, about the condition in which workers on the previous shift had left certain

equipment. When the supervisor stood closer to Hudson, he smelled alcohol and suspected that Hudson might be drunk.

At the request of a human resources officer, and after discussing the matter with his union steward, Hudson consented to a drug and alcohol test. The first test registered a blood-alcohol concentration of 0.172, the second a concentration of 0.169. Johns Manville suspended Hudson (who drove himself home from the plant, despite being over the legal limit to drive) pending a further hearing, after which the company fired him.

The CBA provides that Johns Manville's decision to fire Hudson was arbitrable, and so Local 20 brought the matter to arbitration. In such a case, the CBA specifies, the arbitrator has jurisdiction over:

    (a)    Adjudication of issues which under [the CBA] are subject to submission to arbitration;

    (b)    Interpretation of the specific terms of the [CBA] which are applicable to the particular issue;

    (c)    A decision or award which is not contrary to, and which in no way adds to, subtracts from or alters the terms of [the CBA]; [and]

    (d)    Reversing the decision of the Company in matters involving the fairness of discipline, discharge or change of status of an employee, only if it is found that the Company has acted arbitrarily and without just cause, or in violation of [the CBA.]

(Doc. 4–1 at 43).

The arbitrator found the evidence to be conclusive that Hudson's supervisor reasonably suspected he was intoxicated; that the blood-alcohol testing was accurate, reliable, and proved that Hudson was intoxicated; and that Hudson violated Critical Plant Rule 10.

But the arbitrator held that Johns Manville lacked just cause to fire Hudson for that infraction. This was so, the arbitrator explained, because "the just cause principle" required him

to consider not only the nature of Hudson's misconduct, but also his "length of service with the Employer and [his] discipline and work record." (Doc. 4–3 at 15). Finding that Hudson was "a long term employee; his work record reflects no active discipline; and [he] is a good worker," the arbitrator ruled that Hudson's discharge was "in violation of the just cause provision of the [CBA]." (*Id.*).

In reaching that holding, the arbitrator acknowledged the testimony of Johns Manville's HR representative that "all employees found to have failed a drug and alcohol test, based on reasonable suspicion, were terminated for [the] first offense." (*Id.* at 14). But given the HR representative's failure to back up that assertion with "names, dates or other circumstances," the arbitrator found "a lack of sufficient evidence . . . to support [Johns Manville's] claim of consistent application of discipline." (*Id.*).

The arbitrator accordingly modified Hudson's discharge to a sixty-day suspension and ordered him reinstated with several conditions precedent relating to substance abuse treatment and random drug and alcohol testing.

**Standard of Review**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where, as here, parties have filed cross-motions for summary judgment, the Court grants or denies each motion for summary judgment on its own merit, applying the standards described in Fed. R. Civ. P. 56." *Clarendon Nat'l Ins. Co. v. Lexington Ins. Co.*, 312 F. Supp. 3d 639, 646 (N.D. Ohio 2018) (Carr, J.) (internal quotation marks omitted).

## Discussion

Johns Manville argues that I should vacate the award because the arbitrator "acted outside his authority and resolved a dispute not committed to arbitration." (Doc. 12 at 13).

According to the company, the award nullifies its exclusive right to determine whether an employee's offense warrants progressive discipline or immediate discharge. Because Johns Manville had determined that a violation of the substance abuse policy ought to subject an employee to firing, the company contends that the arbitrator had no power to decide that "suspension with conditions, rather than termination, was appropriate." (*Id.* at 14).

The company also argues that the arbitrator did not find that it acted arbitrarily when it fired Hudson. Because the CBA limits the arbitrator's power to "[r]evers[e] the decision of the Company in matters involving the fairness of . . . discharge" to cases where "the Company has acted arbitrarily and without just cause," and because the arbitrator made no such finding, Johns Manville contends that the arbitrator could not reverse Hudson's firing.

For its part, Local 20 argues that Johns Manville's right to determine the level of discipline for a given infraction does not "pre-empt[ ] the arbitrator's authority under [the CBA] to 'revers[e] the decision of the Company in matters involving the . . . discharge . . . of an employee[.]'" (Doc. 13 at 3). Even though it is company policy that a first substance abuse violation should subject an employee to firing, the union argues that the CBA still permits the arbitrator to decide whether there was just cause to fire an employee who violates that policy.

Local 20 acknowledges that the arbitrator did not make an express finding that Johns Manville acted arbitrarily by firing Hudson (Doc. 10 at 14), but it contends that this omission was not an error.

5

According to the union, the language in the CBA that purportedly requires the arbitrator to make such a finding "would negate entirely the principle of just-cause." (*Id.*). That is so, the union insists, because Johns Manville would be free to fire an employee without just cause – in violation of the CBA – whenever the arbitrator finds that the firing was not arbitrary.

Finally, Local 20 contends that, even if a separate arbitrariness finding were necessary, "such a finding is easily inferable from the Arbitration Award." (Doc. 13 at 6).

### A. Review of Arbitration Awards

My review of "a labor arbitrator's decision is extraordinarily deferential; indeed, it is among the narrowest known to the law." *Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers – Transp. Div. v. CSX Transp., Inc.*, --- F. App'x ----, 2018 WL 6428074, *3 (6th Cir. 2018). I consider only three issues:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract?"

*Michigan Family Resources, Inc. v. Serv. Employees Int'l Union Local 517*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc).

### B. The Reinstatement Award Does Not Alter the CBA's Terms

Johns Manville's argument that the award reinstating Hudson is invalid because it nullifies the company's exclusive right to decide if a rules violation warrants progressive discipline or discharge lacks merit.

First, contrary to repeated misstatements in the company's summary judgment motion (Doc. 12 at 4, 10, 13), the arbitrator neither ignored nor failed to mention that provision of the

CBA. Indeed, the arbitrator quoted the language in full at the outset of his opinion. (Doc. 4–3 at 4).

Second, the reinstatement award is easily reconcilable with Johns Manville's exclusive right to determine that a first substance abuse violation warrants discharge.

Nowhere in his award did the arbitrator doubt that Johns Manville could fire an employee for the first substance abuse violation. What he instead found was that Johns Manville failed to prove that it had just cause to fire Hudson for violating that policy, given Hudson's lengthy tenure with the company, good reputation, and clean disciplinary record.

The arbitrator's award thus recognizes both the company's right to impose "the capital punishment of labor relations," *Johns Manville Corp. v. Local 20, Int'l Bhd. of Teamsters*, 37 F. Supp. 3d 901, 906 (N.D. Ohio 2014) (Carr, J.), and its bargained-for obligation to establish just cause for such an imposition. Johns Manville's own failure to persuade the arbitrator that it had just cause to fire Hudson is not tantamount to the arbitrator "nullifying" its right to determine that violations of the substance abuse policy ordinarily warrant firing, as the company has baselessly claimed.

### C. The Arbitrator Exceeded His Jurisdiction by Reversing Hudson's Discharge Without Finding that the Company Acted Arbitrarily

That said, I agree with the company that I must vacate the award because the arbitrator did not make a finding that Johns Manville "acted arbitrarily" by firing Hudson.

The CBA limits the arbitrator's jurisdiction to reverse a discharge to cases where "it is found that the Company has acted arbitrarily and without just cause[.]" (Doc. 4–1 at 43). Despite finding that Johns Manville lacked just cause to fire Hudson, the arbitrator did not go on to decide the separate question of whether firing Hudson was arbitrary. (Doc. 4–3 at 1–20).

I vacated an arbitrator's award for this reason in *Johns Manville*, *supra*, 37 F. Supp. 3d at 905–06, a case involving the same parties and the same CBA. The arbitrator there ruled that Johns Manville lacked just cause to fire an employee who violated its smoking policy, but he made no finding that the firing was arbitrary. *Id.* at 904. By omitting that finding, I held, the arbitrator was not "arguably construing the contract":

> The decision from the Arbitrator substantially deviated from the standard of the contract. The Arbitrator did not address whether the Company's decision was arbitrary. The award said "Reversing the decision of the Company i[n] matters involving fairness of . . . discharge . . . only if it is found that the Company has acted . . . with-out just cause . . ." [ ] The Arbitrator edited out, with ellipsis, the language requiring a concurrent finding of arbitrariness. Without a finding of arbitrariness, the Arbitrator did not have authority to reverse the disciplinary decision. Thus, I must vacate his award.

*Id.* at 906 (internal brackets supplied).

The same conclusion obtains here: having failed to find that the company acted arbitrarily when it fired Hudson, the arbitrator had no jurisdiction to reverse the award and order him reinstated.[1]

Local 20's arguments to the contrary lack merit.

The union urges me to interpret the CBA as not requiring, as a condition precedent to the arbitrator's ability to reverse Hudson's firing, a separate determination that Johns Manville acted arbitrarily.

But the CBA reserves to the arbitrator "interpretation of the specific terms of the Agreement which are applicable to the particular issue" between the parties (Doc. 4–1 at 43), and nowhere in his award did the arbitrator consider these arguments or so interpret the CBA. I

---

[1] I note that the parties agreed during the arbitration proceedings to frame the issue before the arbitrator as follows: "Was the discharge of the Grievance for just cause? If not, what should the remedy be?" (Doc. 4 –3 at 3). Neither side has argued here that this framing explains why the arbitrator did not address the arbitrariness issue or excuses his failure to do so.

therefore have no basis to interpret the CBA along these lines in the first instance. *Equitable Resources, Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 621 F.3d 538, 545 (6th Cir. 2010) ("For disputes required to be arbitrated under a collective bargaining agreement, the underlying question of contract interpretation is for the arbitrator.") (internal quotation marks and bracket omitted).

I likewise reject Local's 20 contention that I can or should review the award to see if a finding of arbitrariness is "easily inferable" from the arbitrator's decision. (Doc. 13 at 6).

Most importantly, "[t]his is not a typical appeal where this Court may affirm for any reason supported by the record, even if the opinion below did not rely on such grounds. To do so would be to impermissibly replace the judgment of this Court for that of the arbitrator." *Totes Isotoner Corp. v. Int'l Chem. Workers Union Local 664C*, 532 F.3d 405, 418 (6th Cir. 2008).

Because the arbitrator failed to make an arbitrariness finding, I cannot make that finding without substituting my judgment for the bargained-for judgment of the arbitrator.

In any event, even if I were inclined to follow cases like *New Orleans Cold Storage & Warehouse Co. Ltd. v. Teamsters Local 270*, 2017 WL 3521601, *5 (E.D. La. 2017), where the court held that the arbitrator's failure to make an express arbitrariness finding was excusable because such a finding was "rationally inferable" from the arbitrator's decision, I would not be able to infer that the arbitrator believed that Johns Manville acted arbitrarily.

To be sure, some of the arbitrator's factual findings might be consistent with a ruling that Hudson's firing was arbitrary.

As already discussed, the arbitrator emphasized Hudson's lengthy tenure and reputation as a good worker in ruling that Johns Manville lacked good cause to fire him. The arbitrator also suggested there might be a "double standard" in the way Johns Manville treats employees who

9

violate the substance abuse policy. (Doc. 4–3 at 17). As the arbitrator explained, the CBA provides that an employee who tests positive for drugs or alcohol after a random test is entitled to a last-chance agreement, but an employee like Hudson who tests positive after a test based on reasonable suspicion is subject to firing.[2]

At the same time, it is hard to square many of the arbitrator's other findings with his having concluded that Johns Manville acted arbitrarily.

The arbitrator found conclusive evidence that Hudson violated a Critical Plant Rule; that he "compromised" the "safety of employees, [ ] himself, and company property" by reporting to work while intoxicated; and that he "exhibited disregard for company policy and his own safety when he drove himself home." (Doc. 4 –3 at 17). Nor did the arbitrator reject the company's claim – uncontradicted or even rebutted by Hudson – that it had fired every employee who had violated the substance abuse policy after a first infraction, though he did not assign significant weight to it.

Given the mixed evidence, I cannot, even if it were otherwise appropriate to do so, "easily infer" that the arbitrator believed that firing Hudson was arbitrary. Most simply put, the arbitrator had to make this finding in the first instance, but he failed to do so. It would be wholly improper for me to try to fill in the gap using little more than guesswork and speculation as to how the arbitrator would have decided the arbitrariness question.

---

[2] The union relies on this alleged discrepancy as its best evidence of arbitrariness (Doc. 13 at 7–8), but ignores that the arbitrator made this observation expressly in connection with his just-cause ruling. (Doc. 4 –3 at 17) ("Nevertheless, the Union raises a compelling argument regarding a double standard which may be in conflict with the principle of just cause.").

## Conclusion

It is, therefore,

ORDERED THAT:

1. Johns Manville's motion for summary judgment (Doc. 11) be, and the same hereby is, granted; and

2. Local 20's motion for summary judgment (Doc. 10) be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge